IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RIDDELL, INC.,

                              Plaintiff,

        v.                                          OPINION AND ORDER

SCHUTT SPORTS, INC.,                                    08-cv-711-bbc

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Riddell, Inc. is suing defendant Schutt Sports, Inc. for infringing three patents that it owns:  United States Patent Nos. 6,934,971 (the '971 patent), 7,240,376 (the '376 patent) and 7,036,151 (the '151 patent).  The '971 patent is the parent patent of the other two.  All three patents relate to football helmets.  The patents claim improvements in helmet design that are intended to offer more protection to the jaw, make it easier for the wearer to put on and remove the helmet, decrease irritation to the ear and provide a smaller, lighter weight face guard.

Because the patents are so closely related, they share the same specification and some disputed terms. Plaintiff requested construction of four terms, defendant requested construction of nine terms and the parties agreed on the construction of two terms.  The court held a claims construction hearing on June 19, 2009.

1

The '971 patent relates in relevant part to the properties of jaw flaps, jaw pads and notches in the lower edge of football helmets.  It claims a jaw flap extending forward from each ear flap of the helmet and covering a "front portion" and "extent" of the mandible.  The '376 patent relates to football helmets with jaw flaps and jaw pads with particular geometries and properties.  Among other things, it claims a pad assembly attached to each ear flap and including an ear flap pad and a jaw pad of a specific shape and density.  The '151 patent relates to helmet face guards and face guard connectors.  It claims first and second receivers extending outwardly from the main body of the face guard, a connector attached to the shell below the ear opening with channels for engaging vertical members and connection segments on the face guard with vertical members to "engage a connector" and secure the face guard to the shell.

From the parties' arguments at the hearing, their pre-hearing briefs, the patent claims, patent specification and prosecution history, I conclude that judicial construction of seven of the eleven contested terms is warranted.

OPINION

When construing claims, the starting point is the so-called intrinsic evidence:  the claims themselves, the patent specification and the prosecution history.  <u>Teleflex, Inc. v. Ficosa North America Corp.</u>, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  Examination of the

2

claims' language is the starting point for the well established process of claim construction. "Claim construction must adhere carefully to the precise language of the claims that the patent [examiner] has allowed." Ardisam, Inc. v. Ameristep, Inc., 336 F. Supp. 2d 867, 879 (W.D. Wis. 2004) (citing Autogiro Co. of America v. United States, 384 F.2d 391, 396 (Ct. Cl. 1967)). The language is given its ordinary meaning as it would be understood by one of ordinary skill in the relevant art, given its context and the other patent claims. Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001). Moreover, district courts must remain aware that "[t]he patent applicant may not have used words consistent with the dictionary definition because an applicant can act as his or her own lexicographer or may disavow or disclaim aspects of a definition 'by using words or expression of manifest exclusion or restriction, representing a clear disavowal of claim scope.'" Ardisam, 336 F. Supp. 2d at 879-80 (quoting Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1331 (Fed. Cir. 2004)).

The initial construction is considered in light of the specification to determine whether the inventor expressed a different meaning for the language, whether the preferred embodiment is consistent with the initial interpretation and whether the inventor specifically disclaimed certain subject matter. Rexnord, 274 F.3d at 1342-43. The specification contains a written description of the invention that is meant to help explain the invention and possibly define claim terms, Markman v. Westview Instruments, Inc., 52 F.3d 967, 979

3

(Fed. Cir. 1995), but as a general rule, "limitations from the specification are not to be read into the claims." <u>Golight</u>, 355 F.3d at 1331. Finally, the interpretation is examined for consistency with the patent's prosecution history and any disclaimers made therein. <u>Rexnord</u>, 274 F.3d at 1343.

Last, a court may consult extrinsic evidence, such as dictionaries, treatises and expert testimony for background information and to "shed useful light on relevant art." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (internal citations omitted). In general, this type of evidence is less reliable than intrinsic evidence in determining the meaning of claim terms and is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." <u>Id.</u> at 1318-19.

A.  <u>Plaintiff's '971 Patent</u>

1. <u>Jaw flap</u>

• <u>Plaintiff's proposed construction</u>:  A portion of the helmet that extends forwardly from the ear flap toward the front of the helmet shell to overlie a side portion of the lower jaw of the wearer.

• <u>Defendant's proposed construction</u>:  A flap that overlies at least the side of the chin of a wearer.

I conclude that the term "jaw flap" as used in claims 53-59 and 71-73 of the '971 patent and claims 1-6, 9-19 and 25-28 of the '376 patent does not need construction

4

because its plain and ordinary meaning is easily discernible from the claim language.  The parties' proposed constructions reflect nothing more than different definitions of the specific region of the jaw to which the jaw flap must extend, with plaintiff's construction being overly inclusive and defendants' overly limited.  Choosing either construction is not required because the claims at issue already dictate the location of the jaw flap, describing the jaw flap as overlying either the "front portion of a mandible," "an extent of the mandible" or "a chin."  Further defining the term "jaw flap" to include the location of the flap would be redundant and render the independent claims meaningless.  I also note that the specification teaches that the position of the jaw flap will depend on the head size and chin structure of the helmet wearer.  Because the term is clear and nothing in the claim language or the specification necessitates a special definition, the plain and ordinary meaning controls. Northern Telecom Ltd. v. Samsung Electrics Co., 215 F.3d 1281, 1295 (Fed. Cir. 2000).

2.  Front portion of a mandible

- Plaintiff's proposed construction:  A forwardly disposed portion of the lower jaw.

- Defendant's proposed construction:  None.

Again I conclude that the term does not need construction.  The plain and ordinary meaning of "front portion of a mandible" as used in claims 53-59 of the '971 patent is easily discernible from the claim language.  Plaintiff's proposed construction reflects only different

5

words having essentially the same meaning.  The term is clear and nothing in the claim language or the specification necessitates a special definition.  Therefore, the plain and ordinary meaning controls.  <u>Northern Telecom</u>, 215 F.3d at 1295.

3.  <u>Extent of a mandible</u>

• <u>Plaintiff's proposed construction</u>:  A forwardly extending portion of the lower jaw.

• <u>Defendant's proposed construction</u>:  None.

This is another term that does not need construction.  The term "extent of a mandible" as used in claims 71-73 of the '971 has a plain and ordinary meaning readily discernible from the claim language.  Not only is plaintiff's proposed construction not required but it may be too narrow a definition.  The term is clear and nothing in the claim language or the specification necessitates a special definition.  Therefore, the plain and ordinary meaning controls.  <u>Northern Telecom</u>, 215 F.3d at 1295.

4.  <u>Jaw pad</u>

• <u>Parties' agreed construction</u>:  Pad that overlies a portion of the jaw of the wearer.

The parties' construction is consistent with the specification, which says that padding will be on "the inner wall surface 136 of a portion of each of the jaw flap[s] 33 of shell." '376 patent, col. 11, lns. 8-9.  However the specification also teaches that a jaw pad consists

6

of at least one, but preferably three resilient pad members.  Id. at lns. 31-35.  At the hearing, the parties agreed that a jaw pad could include more than one pad.  Therefore, I conclude that the term "jaw pad" as used in claims 71-73 of the '971 patent and claims 1-6, 9-20 and 22-24 of the '376 patent means **at least one pad that overlies a portion of the jaw of the wearer**.

5.  Notches

- Plaintiff's proposed construction:  Angled or shaped portions in the lower edge surface of the helmet shell for preventing flexible members from freely sliding.

- Defendant's proposed construction:  Concave or V-shaped cuts or indentations formed in the lower edge of a helmet shell.

The parties' dispute focuses on the expanse of a notch.  Plaintiff asserts that notches are angled portions of the lower edge of the helmet shell and defendant contends that they are concave or V-shaped indentations in the lower edge of the shell.  Defendant's construction of notch better reflects both the claim and specification language.

The specification says that "notches 107, 108 are generally V-shaped notches; however, other shapes of notches, if desired, could be utilized." '971 patent, col. 9, lns. 15-17.  It also states that "the notches  107, 108 of chin protector connector 34 serve to provide improved stability of the lower chin straps, or flexible members 104, by preventing the lower strap 104 from being free to slide around the outer wall surface of ear flaps 32." Id., col. 9,

7

lns. 59-63.  The specification and diagrams show that "notches" are smaller indentations or cut outs and not large angled portions in the lower edge of the helmet.  Instead of being merely angled, the lower edge of the shell is interrupted by an indentation of some sort.

Although defendant's construction of the word is more accurate, it is too narrow because it appears to limit notches to only two shapes:  concave and V-shaped.  Concave is defined as "arched in" or "curving in," implying a U shape.  Merriam-Webster's Online Dictionary, accessed at http://www.merriam-webster.com/dictionary/concave (visited July 10, 2009).  Therefore, I find that "indentations of any shape" better defines the claim term.

I conclude that the term "notches" as used in claims 42-47 of the '971 patent means **indentations of any shape in the lower edge of the helmet shell that prevent the lower chin straps from moving**.


6.  <u>At least two notches formed in the lower edge surface of the shell . . . and at least one of the flexible members on each side of the chin protector passes through at least one of the notches</u>

•    <u>Plaintiff's proposed construction</u>:  Angled or shaped portions in the lower edge surface of the helmet shell for preventing flexible members from freely sliding.  At least one flexible member on each side of the chin protector passes from inside the helmet to outside the helmet at the angled or shaped portion in the lower edge surface of the shell.

•    <u>Defendant's proposed construction</u>:  Concave or V-shaped cuts or indentations formed in the lower edge of a helmet shell.

8

The parties' dispute centers on what it means for the chin straps to "pass through" the notches.  Plaintiff's construction seeks to define "through" as "passing from the inside to the outside of the helmet at the angled portion."  However, I agree with defendant that there is no need to add further confusion to this term by defining "through."  Therefore, I conclude that no construction is necessary for the term "at least two notches formed in the lower edge surface of the shell . . . and at least one of the flexible members on each side of the chin protector passes through at least one of the notches" as used in claims 42-47 of the '971 patent.  The term's plain and ordinary meaning is easily discernible from the claim language.

## B.  Plaintiff's '376 Patent

1. Pad assembly

- Plaintiff's proposed construction:  One or more pads attached to the helmet.

- Defendant's proposed construction:  Two or more ear flap or jaw pads attached or releaseably secured together.

The parties dispute 1) what pads are included in a pad assembly and 2) whether the individual pads of the pad assembly are secured together or merely secured to the inside of the helmet.  Claims 1 and 20 claim "a pad assembly attached to each ear flap, each pad assembly having an ear flap pad and a jaw pad."  However, claim 25 merely claims "a pad

assembly attached to an inner surface of the shell."  Although the specification does not mention "pad assembly," it teaches that a "shock absorbing liner" preferably "is releaseably connected to the inner wall surface" and "generally includes a plurality of resilient members." '376 patent, col. 10, lns. 51-55 and 61-66.  The specification further teaches that although a "resilient pad member" could be "integral with" all of the other pads, it is preferable for resilient pad members to be releaseably attached to each other, forming a shock absorbing liner.  Id., col. 11, lns. 9-18.

Neither the claims language nor the specification supports defendant's construction that a pad assembly must always include both an ear flap pad and a jaw pad and that the individual pads have to be secured together or secured "releaseably" to a liner in every instance.  These appear to be only embodiments.

Defendant argues that plaintiff used the term pad assembly in prosecuting the patent to refer to jaw *and* ear flap pads, that although claims 25-29 do not use the terms "ear flap pads" and "jaw pads," plaintiff added these claims late in the prosecution and that because plaintiff represented that claims 25-29 did not introduce new matter, the use of the term "pad assembly" in these claims must include ear flap and jaw pads, as specified in the other claims.  This is not a persuasive argument.  Nothing in the patent prosecution history shows that the examiner required a pad assembly to be limited to ear and jaw pads.  Further, any statements plaintiff made about the pad assembly being limited to those areas was directed

10

to a particular claim (number 34 at that time).  Although the later-added claim 25 is broader, the examiner apparently had no problem issuing a notice of acceptability following its addition to the patent.

I conclude that the term "pad assembly" as used in claims 1-6, 9-19 and 20-28 of the '376 patent means **one or more pads**.

2.  <u>Ear flap pad</u>

•  <u>Plaintiff's proposed construction</u>:  A pad located on the ear flap.

•  <u>Defendant's proposed construction</u>:  Pad generally located along the lower and front edge of an ear flap.

I conclude that the term "ear flap pad" as used in claims 1-6, 9-19 and 22-24 of the '376 patent means **a pad located on the ear flap**.  In its pre-hearing brief, defendant had proposed a more restrictive definition, limiting the location of the pad to the lower and front edge of an ear flap.  At the hearing defendant agreed to plaintiff's proposed construction.

C.  <u>Plaintiff's '151 Patent</u>

1.  <u>Receivers extending outwardly</u>

•  <u>Plaintiff's proposed construction</u>:  Portions of the face guard that extend rearwardly from the front portion or main body of the face guard.

- <u>Defendant's proposed construction</u>:  Wire members, projecting from the main body of a face guard, that extend rearwardly in order to be attached to the side of a helmet.

The primary dispute with respect to this term is whether the members only "extend" or whether they "extend and project" from the main body of the face guard.  Both parties agree that the term "rearwardly" better describes the direction in which the receivers extend.

In support of its proposal, defendant relies on depictions of the receivers in the specification.  However, nothing in the claims language or the specification dictates that the receivers extend *and* project.  Defendant argues that "project" needs to be included to distinguish receivers from other portions of the faceguard that extend toward the back.  I disagree.  The terms "project" and "extend" have similar definitions.  The common meaning of project is to extend or protrude beyond something else.  Including both terms in the construction would be duplicative.  Further, as plaintiff points out, claim 14 makes clear that the face guard consists of a plurality of intersecting members, including first and second receivers extending outwardly from the main body.  The patent prosecution history shows that the claim's important distinction from the prior art is that the members are configured to engage the connector, not that they extend or project.  Dkt. #30, Exhs. R-T.

Accordingly, I conclude that the term "receivers extending outwardly" as used in claims 14-19 of the '151 patent means **members of the face guard made of wire or other material that extend rearwardly from the main body of the face guard.**

12

2.  Connection segment

•      Plaintiff's proposed construction:  A portion of the face guard configured to engage a connector that secures the face guard to a helmet.

•      Defendant's proposed construction:  Wire member, projecting from the main body of a face guard, that extends rearwardly in order to be attached to the side of a helmet.

The dispute with respect to this term is similar to that for "receivers extending outwardly."  Defendant argues that the claim requires the term "connection segment" to mean something more than just vertical members connecting to the connector, namely a "wire member, projecting from the main body of a face guard, that extends rearwardly in order to be attached to the side of a helmet."  Defendant asserts that it is the projection that holds the two vertical members of the faceguard.

Claim 23 states that a "connection segment" has two substantially vertical members that are configured to engage the connector.  Because this term is similar to the term "receivers extending outwardly" in claim 14, the two definitions should be consistent, as defendant asserts.  However, plaintiff is correct when it argues that the claim specifically leaves out any reference to projecting or extending rearwardly.  The specification also does not say that these members have to project or extend rearward.  Therefore, I conclude that the term "connection segment" as used in claims 23 and 25 of the '151 patent means

**members of the face guard made of wire or other material that engage the connector on the helmet**.

3.  Channel

- Plaintiff's proposed construction:  A region of a connector configured to engage a vertical member.

- Defendant's proposed construction:  A space in the connector for receiving one of the substantially vertical members.

In their pre-hearing briefs, the parties disputed whether a channel is a region engaging a vertical member (plaintiff's construction) or a space receiving a substantially vertical member (defendant's construction).  At the hearing it became clear that plaintiff was most concerned with the way the channel functions, arguing that there is a significant difference between receiving and engaging because the channel could merely receive a member without engaging it.  Although defendant maintains that "receiving" should be used instead of "engaging," its main concern is that the members be described as "substantially vertical," which plaintiff agreed to at the hearing.

The term "channel" is mentioned only briefly in claim 14 and the specification.  The claim states that the channel is for engaging the vertical member.  The specification teaches that the face guard connector has at least two parallel channels, each which *receives* a portion of the face guard.  '151 patent, col. 8, lns. 1-4.  Because the claim language makes clear that

14

the channel engages the members and I agree that there is a meaningful difference between receiving and engaging something, I will use "engage" in defining the term.  The parties agreed that "portion" is an acceptable alternative to "region" and "space."

I conclude that the term "channel" as used in claims 14-19 of the '151 patent means **a portion of the connector configured to engage the substantially vertical members**.

ORDER

IT IS ORDERED that:

1.  The disputed claim terms of United States Patent Nos. 6,934,971, 7,240,376 and 7,036,151 are construed as follows:

a.  "Jaw pad" as used in claims 71-73 of the '971 patent and claims 1-6, 9-20 and 22-24 of the '376 patent means **at least one pad that overlies a portion of the jaw of the wearer**;

b.  "Notches" as used in claim 42-47 of the '971 patent means **indentations of any shape in the lower edge of the helmet shell that prevent the lower chin straps from moving**;

c.  "Pad assembly" as used in claims 1-6, 9-19 and 22-28 of the '376 patent means **one or more pads**;

15

d.  "Ear flap pad" as used in claims 1-6, 9-19 and 22-24 of the '376 patent means **a pad located on the ear flap**;

e.  "Receivers extending outward" as used in claims 14-19 of the '151 patent means **members of the face guard made of wire or other material that extend rearwardly from the main body of the face guard**;

f.  "Connection segment" as used in claims 23 and 25 of the '151 patent means **members of the face guard made of wire or other material that engage the connector on the helmet**;

g.  "Channel" as used in claims 14-19 of the '151 patent means **a portion of the connector configured to engage the substantially vertical members**.

2.  The other claim terms addressed in this opinion need no construction and retain their plain and ordinary meaning.

Entered this 10th day of July, 2009.

BY THE COURT:

*Barbara B. Crabb*

BARBARA B. CRABB
District Judge

16