IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RIDDELL, INC.,

                                                                                                                      ORDER

                            Plaintiff,

                                                                                                                  08-cv-711-bbc

      v.

SCHUTT SPORTS, INC.,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This patent infringement lawsuit is scheduled to go to trial on August 2, 2010. At the pretrial conference hearing held on July 21, 2010, I told defendant it could seek clarification of the definition of "jaw flap" before trial and the parties have now filed their briefs on the matter. After reviewing their briefs, I agree with plaintiff that defendant has done little more than rehash the arguments it raised earlier. As in its original brief in support of its first proposed construction for "jaw flap," dkt. #30, at 3-13, once again defendant argues that certain passages from column 5 and Figure 19 of the specification and the prosecution history support requiring the jaw flap to extend farther down the mandible than specific claims require explicitly.

         Although defendant's new arguments are not verbatim, they cover very little new

1

ground. (The exception includes two pieces of prior art not mentioned before. As explained below, they do not help.) This alone would be a basis for rejecting defendant's proposed limitation, but there is a separate reason for rejecting the limitation: defendant's arguments in favor of it are unpersuasive. Defendant's reliance on column 5 and figure 19 fails because the specification's discussion of jaw flap position in figure 19 describes nothing more than an embodiment. E.g., '971 pat., col. 5, lns. 1-2 (prefacing discussion of figures as being "in accordance with the present invention"). The discussion of the jaw flap embodied in figure 19 cannot stand up to the evidence of differing use of "jaw flap" in different claims. For example, although the specification states that "[i]t is believed that jaw flap 33 [shown in Fig. 19] will overlie at least the forwardly disposed portion 55 of the lower jaw 47 of virtually all wearers," certain claims describe jaw flaps extending less far. '971 pat., cls. 53 (requiring jaw flap to overlie "*a* front portion of a mandible") (emphasis added) and 54 (requiring jaw flap to overlie "the *body* portion of the mandible") (emphasis added).

Next, while suggestive, the cited prosecution histories of the patents do not amount to a "clear and unmistakable" disavowal of claim coverage during the prosecution of the patent. Computer Docking Station Corp. v. Dell, Inc., 519 F. 3d 1366, 1374 (Fed. Cir. 2008). In response to a rejection of what would become claim 53 in light of prior art flap covering the mandible, the examiner noted that the applicant agreed to

> further define the helmet's jaw flaps for instance by limiting the ends of the

2

> jaw flaps to be within the same quadrant of a circumference relative to the helmet. Applicant proposed amending claims to define a hard shell as opposed to Carlini's soft shelled helmet. Claim language detailing that the jaw flaps overlie the chin was agreed to define over Carlini.

Dkt. #316-3, at 16. This statement alone shows that, rather than explain that the term "jaw flaps" had a narrow meaning that distinguished it from Carlini, the patentee agreed to include "claim language detailing" what was meant. The patentee amended the application to require the jaw flap in claim 53 to overlie "a front portion of a mandible" *for that claim*. Other claims include other explicit limitations, and the examiner allowed those limitations.

Moreover, although the patentee also stated at one point that Carlini's helmet "only covers the side portion of the mandible" (suggesting that "jaw flap" must cover something more), this would not establish defendant's point. Defendant seeks to require that in every instance the helmet cover the *entire* front portion of the mandible, rather than just "beyond the side portion of the mandible."

Defendant's concerns that claim 25 of the '376 patent and its dependent claims do not include such limiting language are misplaced. Claim 25 does not include a certain size limitation to the "jaw flap," but it does include particular shape limitations (as do its dependant claims). But that is just fine. A patentee can choose to claim shape or size; in this instance, shape was the focus. Nothing about the patent prosecution or the specification's discussion of the figure 19 embodiment establishes that the size of the jaw

flap and its exact location on the human head are essential to every claim. Defendant may find it ridiculous that a one millimeter "jaw flap" might infringe, which might be the case if there is no size limitation. That is not the point. For claims construction, what matters is the scope of what is claimed, not what is practical. (At any rate, there may be inherent size limitations to the extent a certain size might be required to create the claimed shapes).

The new pieces of prior art defendant identifies, United States Patents Nos. 5,101,517 and 5,539,936, are inapposite to the question of construction because they show only that certain shapes were present in the art. This does not further the discussion about what "jaw flap" means; at most, it is a reason to consider the claimed flaps obvious or anticipated. That question is one defendant will have to address at trial.

To reiterate, the term "jaw flap" does not require the claimed flap to overlie the entire front portion of a mandible in every case, just as it does not require the flap to overlie the side of the chin.

In conclusion, I will grant defendant's motion for clarification to resolve this last-minute dispute about the scope of the term "jaw flap." "Jaw flaps" will retain the construction I provided in the order on defendant's motion for summary judgment, with the clarification that this construction does not require the flap to "overlie[] at least the forwardly disposed portion of the lower jaw of the wearer" as defendant had proposed. (Defendant suggests that *some* additional wording must be provided because the parties are

seeking clarification about the meaning of jaw flap. That is not so. With respect to claims construction, all that is ever required is that the court resolve all concrete disputes about the scope of a term as a matter of law, which I have now done.

## ORDER

IT IS ORDERED that

1. The motion in limine filed by defendant Schutt Sports, Inc. for clarification regarding the scope of the term "jaw flap" is GRANTED. The term "jaw flap" retains the construction provided in the order on defendant's summary judgment motion, entered July 19, 2010, with the clarification that this construction does not require that the claimed flap "overlie[] at least the forwardly disposed portion of the lower jaw of the wearer."

Entered this 28th day of July, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge